IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TABATHA WASHINGTON and<br>DONTE HOWARD,<br><br>                Plaintiffs,<br>v.<br><br>CITY OF CHICAGO,<br>VINCENT ALONZO (Star No. 21623),<br>ADRIAN GARCIA (Star No. 20517), and<br>DEMOSTHENES BALODIMAS<br>(Star No. 21204),<br><br>                Defendants. | Case No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Tabatha Washington and Donte Howard, for their Complaint against Defendants City of Chicago, Cook County, Illinois, Vincent Alonzo (Star No. 21623), Adrian Garcia (Star No. 20517), and Demosthenes Balodimas (Star No. 21204), state as follows:

## INTRODUCTION

This lawsuit asserts claims arising from Tabatha Washington and Donte Howard being unlawfully charged with the murder of Kim Edmondson, who was found dead behind a dumpster in the parking lot of 5147 West Lake Street, Chicago, Illinois at 9:20 p.m. on May 30, 2018, as the result of blunt force trauma to the back of his head.  As addressed below, Plaintiffs were charged with, and indicted for, First Degree Murder solely on the basis of Defendants' false statements and the approval of felony charges without probable cause.  No evidence connected Plaintiffs to Edmondson's death and on November 19, 2019, after trial, Plaintiffs were acquitted of all charges.

## PARTIES

1.     Tabatha Washington ("Tabatha") is 35 years old and currently resides in Chicago. On May 30, 2018 she was 33 years old and resided in Chicago.

2.     Donte Howard ("Donte") is 35 years old and currently resides in Chicago.  On May 30, 2018 he was 33 years old and resided in Chicago.

3.     The City of Chicago ("Chicago") is a municipal corporation under the laws of the State of Illinois.  For purposes of the state law claims, Chicago is responsible for the acts of its employees while they are acting within the scope of their employment.  For purposes of the federal claims, Chicago has indemnity liability under state law.

4.     Defendants Vincent Alonzo ("Alonzo"), Adrian Garcia ("Garcia") and Demosthenes Balodimas ("Balodimas") (collectively the "Defendant Officers") are individuals. For purposes of the federal claims, each Defendant Officer is being sued in his individual capacity.  At all relevant times, the Defendant Officers were employed by Chicago and the Chicago Police Department ("CPD").  Each Defendant Officer acted under color of state law, and acted within the scope of his employment during the investigation of the death of Kim Edmondson ("Edmondson").

## JURISDICTION AND VENUE

5.     Plaintiffs bring federal claims pursuant to 42 U.S.C. § 1983 to redress the deprivation of their rights under the United States Constitution, and related claims under the laws of the State of Illinois.

6.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and over their state law claims pursuant to 28 U.S.C. § 1367.

7.     All Defendants are residents of Illinois.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiffs' claims all occurred within this judicial district.  Venue also is proper in this district under 28 U.S.C. § 1391(b)(1) because some or all Defendants reside in this judicial district.

## FACTS COMMON TO ALL COUNTS

8.     On the evening of May 30, 2018, Plaintiff Tabatha Washington was in front of her apartment with her children, her cousin Carlton White, and her friends, Cynthia Cage and Plaintiff Donte Howard.  At that time, Kim Edmondson, who was high on cocaine, PCP and alcohol (as the Medical Examiner would later confirm) approached, acting aggressively and erratically.  Edmondson had lived in an apartment in the same building before his mother kicked him out.   Edmondson began screaming and calling Tabatha and Cynthia Cage "bitches" and "hoes."  After Tabatha objected to Edmondson's use of profanity in front of her children, a brief scuffle ensued, during which Carlton White and Edmondson shoved each other.   When Edmondson refused to leave, Tabatha picked up a lightweight, eighteen inch, hollow leg from a child's play table (which Cynthia Cage described as "a little bitty pole" "like something that'd come off a chair…really, really light"; Defendants would later describe it in reports as a "pipe").

9.     Edmondson began walking away but then turned around, returned and again shouted at and berated the women.  When Edmondson lunged at Tabatha, she hit him with the table leg twice, resulting in a cut by his mouth, and an abrasion on his chest.  Edmondson thereupon walked off again in a huff.

10.     Edmondson soon returned a third time, again acting erratically. Edmondson and Donte Howard thereupon engaged in a scuffle in the street in front of the apartment building, during which Donte landed a few soft punches on Edmondson with his fists.  As Cynthia Cage

testified, "it wasn't a fight really at all. It was something like little cat swipes basically." Edmondson then stormed off a third time. An eyewitness to this scuffle in the street reported in a 911 call that neither participant had a weapon.

11.     Edmondson then walked seven blocks (a half mile) to a parking lot at Lake and Laramie. Much of that walk is captured on video; at no time did Edmondson appear to be in any distress, nor was he bleeding in the back of the head.

12.     Edmondson encountered three friends at the parking lot; one of whom, Anthony Beard, testified:

Q.     And so after he told you this did you notice any injuries on [Edmondson]?

A.     Yes, his lip, he had a gash that was bleeding and he had a gash in his chest, this wasn't bleeding, but that is all I seen.

Q.     So after he told you what happened where did he go?

A.     First I offered to take him to the hospital but he said he didn't want to go and then he went to the back behind the dumpster where people normally use the bathroom back there and somebody came out and told him he fell out.

Q.     And did you go back there and check on him?

A.     Yes.

Q.     What happened when you got back there?

A.     He wasn't breathing.

Q.     ***Did you notice any injuries when you saw him?***

A.     ***He was bleeding from the back of his head.***

Q.     And so ***did you notice that from before***?

A.     ***No.***

(emphasis added).

13.     This testimony was consistent with the videotaped statement that Anthony Beard gave to Garcia and ASA Patrick Waller on May 31, 2018, at 8:35 p.m.

14.     The second friend, Khadijah Hill, gave a videotaped statement to Defendant Alonzo and ASA Waller on May 31, 2018, at 8:20 p.m. Ms. Hill said that Kim Edmondson walked over by the dumpster and never came back. She stated that she assumed he hit his head because when she looked at him, it was from the front and "nothing was dripping" (motioning to the back of her head). The only injuries she described seeing prior to his fall were the cut on the left side of his lip and on his chest.  On information and belief, Hill later gave the same testimony before a grand jury.

15.     The third friend, Larry Nelson, gave a videotaped statement to Defendant Garcia and ASA Waller on May 31, 2018 at 8:05 p.m.  He also testified before a grand jury on June 27, 2018. In recounting the events of May 30th, he described Edmondson bleeding from the side of his face and chest when he approached them in the parking lot at Lake and Laramie; he saw no wound on the back of Edmondson's head.

16.     The Medical Examiner opined that the cause of Edmondson's death was blunt force trauma to the back of the head. He sustained a 1 x 15/16 inch, nearly round hole in his right parietal skull, the only fatal injury. The other injuries noted by the Medical Examiner could not have caused his death.

17.     Larry Nelson told police that Edmondson reported that he had been in a fight with his neighbors "who live in the basement apartment."  Accordingly, Defendants Garcia and Balodimas went to the apartment building at 5316 West Washington.  It was there that Balodimas, while standing outside in front of her apartment, supposedly heard Tabatha say

"Fuck that bitch. He got what he deserved." White then supposedly said "when you protect, you have to fight." Tabatha supposedly replied, "He isn't going to get my gun."

18.     Balodimas' report of what he supposedly heard was a lie. Among other things, Tabatha, Carlton White and Cynthia Cage were sitting in the back of the apartment building, not the front, when Defendants Balodimas and Garcia arrived. Moreover, Tabatha had never owned a gun, and no gun was found when police searched the apartment later that night.

19.     Defendants Garcia and Balodimas took Tabatha and Carlton White into custody for questioning.

### The Interrogation of Tabatha Washington

20.     Defendants knew that Tabatha could not have inflicted the fatal blow to Edmondson. Accordingly, they went to extraordinary measures to get her to say that the much larger Donte hit Edmondson on the head with a pipe or a pole, measures which gravely jeopardized Tabatha's health.

21.     Tabatha was placed in an extremely cold interview room shortly before midnight on May 30, where she remained for the next day and a half. Tabatha was first interviewed thirty minutes later, on May 31 at roughly 12:30 a.m., by Defendants Garcia and Alonzo; at the conclusion of which she was given a sweatshirt and a cot to lie on, though no blanket or pillow. (She was eventually given a second cot, at 11:45 that morning, to act as a makeshift blanket; and an actual blanket at roughly 5:35 p.m. on May 31). Garcia and Alonzo returned to the room several times between 12:30 a.m. and 3 a.m. to interview Tabatha further, ignoring her pleas to make a phone call in order to check on the status of her children, two of whom had special needs. (She was finally given the opportunity to make a phone call at 2:48 p.m. on May 31).

22.     Garcia re-entered the room at roughly 3:00 a.m. on the morning of May 31, this time with Balodimas.  The detectives interrogated Tabatha for the next 20 minutes, repeatedly berating her and accusing her of being a liar.  They repeatedly insisted that Donte must have hit Edmondson with a pole; Balodimas candidly told Tabatha that "the damage that was done to his head, you couldn't have done that."   Balodimas also claimed that he heard Tabatha and her cousin make the aforementioned statements about Edmondson getting "what he deserved," a claim that Tabatha repeatedly and vehemently denied.

23.     Tabatha was visibly ill throughout her 34-plus hour period of detention, and she vomited in a waste basket at least four separate times.  Tabatha, a Stage 4 diabetic, required regular medication, and her blood sugar had dropped to dangerously low levels.  Alonzo acknowledged that he knew that she was a diabetic and needed food, but the only meal that was provided to her was a McDonald's quarter pounder with cheese and french fries, which she told Alonzo that she could not eat due to her diabetes.  The only other food that she was given was a bag of potato chips and candy.

24.     Alonzo told her at 5:34 p.m. on May 31 that he would "get a car to transport" her to get her insulin.  She was eventually taken for medicine at 6:43 p.m. - almost 24 hours after being taken into custody - and returned to the room at roughly 7 p.m. that same night.  Alonzo and ASA Waller returned to re-interview Tabatha at roughly 11:37 p.m.  Tabatha repeatedly told them that she had struck Edmondson only twice, once in the mouth, and once in the chest, and was adamant that Donte used only his fists during his subsequent scuffle with Edmondson in the street.  ASA Waller concluded the interview at roughly midnight.

25.     Alonzo returned to the room at roughly 2:12 a.m. on June 1 to give Tabatha a bottle of water and Skittles.  He claimed that in the morning he would be going to her house to

search for evidence, and told her that "if you're not the one who caused this man's [injury] I have no intention of wanting to put you in jail," and that "[the lab] gave us some information on what they think might have caused this so if we find it we'll know."  When Tabatha asked what they thought caused it, Alonzo responded: "I'm not going to tell you that right now…but we'll know if we see it, they gave us a good idea of what they think it is."  This, of course, was a lie.

26.    Tabatha was finally, after 34-plus hours, removed from the interview room at 10:10 a.m. on the morning of June 1, at which time Defendant Officers charged and jailed her.

### The "Murder Weapon"

27.    Defendants' Case Supplementary Report described the "murder weapon" as a "pipe."  As addressed above, Tabatha hit Edmondson twice with a lightweight, hollow, play-table leg, which police collected from Tabatha's apartment along with three metal tubes used to help feed two of Tabatha's special-needs children.  All four items were tested for Edmondson's DNA; only one – the table leg – resulted in a match.

### The Charges

28.    On June 1, 2018, Defendants contacted Felony Review and, on information and belief, reported (1) the supposedly overheard conversation referenced in Paragraph 17 above, and (2) the "fact" that Tabatha had hit Edmondson over the head with a pole.  These statements were false.  As the result, ASA Laura Ayala-Gonzalez approved a charge of First Degree Murder for Tabatha, but rejected charges against Carlton White (who had jostled with Edmondson during the first of the three altercations).

29.    On June 4, 2018, Defendants issued an "Investigative Alert with Probable Cause" for Donte and later that day, Donte was arrested.  On June 6, 2018, on information and belief, Defendant Alonzo contacted Felony Review and stated that Donte was beating Edmondson while

Tabatha was beating Edmondson over the head with a pole.  This statement was false.  As a result, ASA Laura Ayala-Gonzalez approved a charge of First Degree Murder against Donte Howard.

### The Grand Jury Proceedings

30.    Cynthia Cage testified before a grand jury, and recounted the various altercations with Edmondson on May 30, 2018.  On information and belief, Ms. Cage testified that she saw Tabatha hit Edmondson twice with the metal object: once near his mouth and once near his chest.  She also saw Donte swipe Edmondson with his fist.

31.    As addressed above, Anthony Beard, Khadijah Hill and Larry Nelson all testified that they observed only the two minor injuries when they spoke with Edmondson in the parking lot at Lake and Laramie: a cut of his mouth and a cut on his chest.  None of Edmondson's three friends saw a head wound until they saw his body after he fell behind the dumpster.

32.    Since none of the eyewitnesses connected Plaintiffs to the blunt force trauma in the back of Edmondson's head, the State did not seek an indictment based on their testimony.  Instead, a subsequent grand jury returned an indictment for First Degree Murder against Tabatha and Donte based solely on the testimony of Detective Alonzo.  While the Public Defender will not release the grand jury transcripts without a court order, during a June 2, 2018 hearing before Judge Lyke, ASA Dall made the following representations:

> The Defendant Washington struck the victim with a pole multiple times causing injuries to his face, **head** and chest.  The co-offender [Donte] also struck victim about the body with his fists.

> * * *

> Detectives overheard a female and male voice indicating that the victim got what he deserved….Defendant later made admissions of *striking the victim with a metal pipe.*

(emphasis added). Defendant Officers were the source of this "information."

33.     This false narrative – which the State would later repeat many times – was created by Defendants. Among other things, Defendants: (1) conflated three different altercations into a single altercation; (2) lied about Tabatha hitting Edmondson on the head; (3) transformed the small, hollow table leg into a "pipe"; and (4) lied about the supposedly overheard conversation. On information and belief, Defendant Alonzo later reprised this false narrative in his testimony before the grand jury.

34.     Defendants also knew that Tabatha's "weapon" could not have caused the nearly round 1 x 15/16-inch blunt force trauma on the back of Edmondson's head. To begin with, none of the witnesses ever stated that Tabatha ever hit Edmondson on the head. Moreover, Defendants knew that the "weapon" could not have delivered the fatal blow: a 1 x 15/16-inch circular hole at the back of Edmondson's head. Indeed, for the small pole to cause such an injury, it would have had to be driven perpendicularly into the back of Edmondson's skull, something that the diminutive Tabatha (5'4", 125 pounds) could not possibly have achieved. Instead, the fatal head wound was compatible with the handle of the dumpster where Edmondson fell, an empty vodka bottle by his side.

35.     Defendants also knew – from the reports of every eyewitness – that Donte had no weapon during his scuffle with Edmondson. Defendants did not share any of this exculpatory information with ASA Laura Ayala-Gonzalez, and it was not elicited in Defendant Alonzo's testimony before the grand jury.

36.     Based solely on Defendant Alonzo's false testimony, the grand jury returned a seven-count indictment of Tabatha and Donte for First Degree Murder.

**The Chicago Media Demonizes Tabatha**

37.     The Chicago news media jumped on the false narrative.  WGN posted the story:

"**Woman Accused of Beating Neighbor to Death with Pipe**", identifying Tabatha and

publishing her photo.  (Exhibit A)

38.     Likewise, the Sun-Times ran the following story:

**Woman Used Metal Pole To Beat Neighbor To Death In Austin Apartment: Prosecutors (June 2, 2018):**

*A woman said her neighbor "got what he deserved"* after she and a friend beat him to death Wednesday night in their Austin neighborhood apartment building, according to Cook County prosecutors.

*Judge John Fitzgerald Lyke Jr. on Saturday called the alleged attack a "feeding frenzy" before he denied bail for Tabatha Washington,* 33, charged with first-degree murder in the death of 28-year-old Kim K. Edmundson.

\* \* \*

*Washington used the pole to repeatedly hit Edmundson in the face, head and chest, while her friend punched him, Dall said.*

\* \* \*

Washington and her friend returned to Washington's apartment with a third person, and responding police officers could hear their loud conversation through a window, with someone saying, "He got what he deserved," Dall said.

\* \* \*

Two people were arrested, according to the police report, but only Washington has been charged in the case.  Washington, who has no criminal background in Cook County, will remain jailed until her next court date Monday. If convicted, she could face a life sentence.

(Exhibit B, emphasis added).  The Tribune ran a similar story.  (Exhibit C).

**The Trial**

39.     On November 19, 2019, after a bench trial, Judge Diane Kenworthy found

Tabatha and Donte not guilty of all charges, ruling from the bench:

The Court next heard from two witnesses that observed Mr. Edmondson when he arrived at Laramie and Lake after his altercation on Washington. Both of these witnesses knew the complaining witness as Mo-man and seemed to be fond of him. In fact, the Court saw one of these witnesses hug the complaining witness's family as she left court.

These witnesses, Anthony Beard and Khadijah Hill, testified that they saw a cut on Mr. Edmondson's lip and chest and offered help to get him medical attention.

Mr. Edmondson was not wearing a shirt. He refused their offer of help and instead wanted to go back to the location where he claimed he had been jumped. They said that he was angry. *At no time did they observe any injury or blood to the back of the complaining witness's head.*

Ms. Hill testified that when she -- she spoke to the complaining witness for approximately ten minutes before he said, quote, hold that thought, I'm going to go use it, and went off toward the dumpster to relieve himself.

*At this time, she had the opportunity to observe Mr. Edmondson from behind as he walked off again, she did not observe any injury or blood on the back of his head.* Moments later, she was told that Mr. Edmondson was found unresponsive on the ground by the dumpster.

The Court heard from two evidence technicians and had the opportunity to review the photos they took. In addition, the Court watched pod video of Mr. Edmondson traveling from Washington to Laramie. At no time did the Court observe blood coming from the back of the complaining witness or of him holding his shirt to the back of his head.

The Court also reviewed the stipulations in this case, including the stipulations regarding the complaining witness's two prior arrests: One for battery in which he struck someone over the head with a bottle and one in which he punched his foster sister in the eye causing bruising and swelling.

After reviewing all of the evidence in case, it is the Court's finding that neither defendant is guilty of murder or mob action. *There was no evidence that Derrick, Donte, and Tabatha acted in concert.* The only common factor on Washington Street was the complaining witness's continued aggression towards multiple parties.

Given his prior history of violence, both with the arrest discussed in the Lynch motion and the incident regarding Derrick the week before the incident that led to the case in court, it is understandable why Tabatha Washington would try to remove Mr. Edmondson from the block.

*The Court will take note that Ms. Washington is very petite in stature. She used a pole to try to persuade the complaining witness to leave. Any injuries inflicted by that pole were minimal.*

The complaining witness then moved on to Donte Howard, who engaged in a minor scuffle with him. No weapons were involved in that altercation, which is corroborated by the 911 call.

***At no time did anyone see either defendant strike the complaining witness on the back of the head with anything. At no time did any witness, either on Washington or on Lake and Laramie, observe blood or injuries to the back of the complaining witness's head.***

Mr. Edmondson ingested multiple substances, including alcohol, cocaine, and PCP. He went to relieve himself and was found unresponsive on the ground by a dumpster with an empty vodka bottle next to him.

To be certain, his death is tragic, but neither Tabatha Washington nor Donte Howard are legally responsible for his death. The Court finds that the State has not met its burden, and there is a finding of not guilty on all counts against both defendants.

(Exhibit D, Trial Transcript of 11/19/19 at pp. 201 – 204, emphasis added).

40.    Significantly, at trial, the Medical Examiner testified that the "pole" at issue would have had to hit Edmondson's head perpendicularly to cause the fatal wound:

Q.    To cause the kind of circular -- round circular defect that went through his -- his -- the skin and his skull into the brain, it's fair to say that someone would have to use one of those poles and strike him head-on with a pole in the back of the head to cause that injury; correct?

A.    ***It would be a perpendicular strike to the back of the head, yes.***

(Exhibit D at 91; emphasis added).    At all times, Defendants knew that Tabatha could not possibly have dealt such a blow.

### Defendants' Lies Wrecked Plaintiffs' Lives

41.    Plaintiffs' lives were wrecked as a result of Defendants' lies.  Tabatha was the sole caretaker and provider for her three children, two of whom have had significant medical needs and developmental delays.  Due to her arrest, Tabatha lost custody of her three children, who have been separated into two different foster homes.  Even today, two months after her acquittal, Tabatha is still battling DCFS to regain custody of her children.

42.     During her entire time in Cook County Jail, Tabatha's diabetes flared out of control due to stress and the inability to eat healthy food.  Her blood sugar levels fluctuated wildly from highs of over 500 to lows of 33; conditions which placed Tabatha at risk of a diabetic coma or death.  Tabatha got so sick that she had to be transported to Stroger Hospital in shackles twice for treatment.

43.     Tabatha now suffers from permanent nerve damage throughout her hands, feet and legs as a result of the inadequate diabetes treatment that she received during her incarceration.  This condition requires daily medication to help control the pain.

44.     While at Cook County Jail, Tabatha was also threatened.  One inmate handed Tabatha a "kite" – a piece of paper from an anonymous inmate from another tier – stating: "Bitch, when I find you in here or outside, I'm going to kill you like you killed my homie."

45.     Tabatha's incarceration also made contact with her children difficult at best.  One overzealous corrections officer barred Tabatha from seeing her daughter who had come for a visit "because she needed a guardian."  The medical condition of Tabatha's youngest child precluded him from visiting Tabatha in jail.

46.     On October 29, 2018, Tabatha was released on an I-Bond with the requirement of electronic home monitoring ("EHM").  However, EHM was twice revoked and Tabatha was returned to Cook County Jail – once for over a month – after she was wrongfully accused of violating her EHM conditions.

47.     These issues caused Tabatha to regularly experience nightmares that have continued to this day.

48.     In addition, this ordeal has jeopardized Tabatha's career.  Tabatha earned her Certified Nursing Assistant ("CNA") degree from Malcolm X College in 2003 at the age of 16.

Prior to her arrest, other than taking time off to care for her children, Tabatha had been continuously employed as a home care nurse or a CNA.  Now, any prospective employer running a Google search of Tabatha's name immediately sees her mugshot and articles about her brutally beating a neighbor to death with a pipe – a profile jarringly at odds with a career in health care.

49.     Meanwhile, Donte spent the entire time from his June 4, 2018 arrest until his November 19, 2019 trial housed in Cook County Jail.  Donte spent 16 months of that time in Division IX among the jail's most violent pretrial detainees.

50.     In the first week of his incarceration, Donte was subjected to daily threats from, and fights with, other inmates.  Thereafter, he was subjected to witnessing or hearing a depressing daily routine of fights, sexual abuse and open masturbation.  This activity exacerbated the stress Donte experienced from being incarcerated.

51.     As a result, Donte suffered psychological trauma for which he had to seek therapy and take medication.  He also suffered from insomnia, and any meaningful sleep was interrupted by nightmares.

52.     Before his arrest, Donte had been attending Truman College; this ordeal has delayed his ability to obtain a degree (and seek meaningful employment) by over eighteen months.  It also prevented Donte from caring for his mother, which added to his distress.

**By Charging Tabatha and Donte, Defendants Were Able to "Clear" the "Homicide"**

53.     Once the Medical Examiner deemed Edmondson's death a homicide, the investigation could not be "cleared" until someone was charged.  In recent years, the CPD has come under increasing criticism for its declining murder clearance rates.  As USA Today reported in its September 21, 2018 article titled **"Chicago Police solved fewer than one in six homicides in the first half of 2018"**:

> Chicago's homicide clearance rate – the percentage of cases in which police arrest or identify a suspect – fell from 17.1 in 2017 to 15.4 during the first six months of 2018, the data shows. If the rate holds through the end of the year, it would be the sixth consecutive annual decline.

This was just one of numerous national and local articles decrying the CPD's murder clearance rate. (*e.g.,* Washington Post, November 5, 2016: **"As Killings Surge, Chicago Police Solve Fewer Homicides";** ABC News, August 8, 2018, **"Chicago Police Homicide Clearance Rate Remains Low")**.

54.     The CPD's declining murder clearance rate was a continuing source of embarrassment to then Mayor Emmanuel and Police Superintendent Johnson. As a result, Johnson put increasing pressure on the CPD to bring up the murder clearance rate.

55.     When Defendants charged Tabatha and Donte with First Degree Murder, despite knowing that they did not murder Edmondson, they were able to "clear" Edmondson's "homicide." And under CPD policy, once a homicide is charged, it remains cleared, regardless of any later acquittal.

56.     The fact that Tabatha and Donte were from Austin – the most violent neighborhood in Chicago – likely influenced Defendants' shocking disregard of the consequences of that charge. For example, one cannot imagine Defendants treating a similarly situated Lincoln Park woman (a 33-year old Certified Nursing Assistant with a spotless record) in the same manner in which they treated Tabatha.

### Count I - 42 U.S.C. §1983

57.     Plaintiffs incorporate each preceding paragraph of this Complaint as if fully restated herein.

58.     Defendant Officers, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiffs of their constitutional rights, at least a

violation of the Fourth Amendment by knowingly causing Plaintiffs' arrest and continued detention pursuant to judicial process without probable cause. Defendant Officers caused the charge and detention of Plaintiffs despite the lack of evidence or probable cause, as well as the falsification of reports and utter indifference to exculpatory evidence.

59.     Defendant Officers also caused Plaintiffs to be deprived of their liberty in violation of their right to due process guaranteed by the Fourteenth Amendment.

60.     Defendant Officers are each individually liable for the others' actions because they reached an agreement to proceed against Plaintiffs through collective action despite knowing that Plaintiffs were innocent. All three Defendant Officers were aware of all of the witness statements and physical evidence demonstrating such innocence, and they worked as a team to pursue the charges against Plaintiffs. Also, each Defendant was aware of the actions of the other Defendants yet failed to intervene to prevent the violation of Plaintiffs' constitutional rights.

61.     As a result of these violations of Plaintiffs' Fourth and Fourteenth Amendment constitutional rights, Plaintiffs suffered physical harm, financial damages, and severe emotional distress and anguish.

**Count II – Malicious Prosecution**

62.     Each paragraph of this Complaint is incorporated as if restated fully herein.

63.     In the manner described more fully above, Defendant Officers accused Plaintiffs of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiffs without any probable cause for doing so.

64.    In so doing, these Defendant Officers caused Plaintiffs to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

65.    Defendant Officers actions were taken under color of law and within the scope of their employment.

66.    As a result of Defendant Officers misconduct described in this Count, Plaintiffs suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### Count III – Intentional Infliction of Emotional Distress

67.    Each paragraph of this Complaint is incorporated as if restated fully herein.

68.    The actions, omissions, and conduct of Defendant Officers, as set forth above, were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiffs, as is more fully alleged above.

69.    Defendant Officers' actions were taken under color of law and within the scope of their employment.

70.    As a result of Defendant Officers' misconduct described in this Count, Plaintiffs suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### Count IV – Respondent Superior

71.    Each paragraph of this Complaint is incorporated as if restated fully herein.

72.     While committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

73.     Defendant City of Chicago is liable as principal for all state-law torts committed by their agents.

### Count V – Indemnification

74.     Each paragraph of this Complaint is incorporated as if restated fully herein.

75.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.

76.     Defendant Officers were employees and agents of the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

**WHEREFORE**, Plaintiffs Tabatha Washington and Donte Howard respectfully request that this Court enter a judgment in their favor and against the City of Chicago, Vincent Alonzo (Star No. 21623), Adrian Garcia (Star No. 20517) and Demosthenes Balodimas (Star No. 21204), awarding compensatory damages, attorneys' fees and costs against each Defendant, punitive damages against each of the individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs Tabatha Washington and Donte Howard hereby demand a trial by jury pursuant

to Federal Rule of Civil Procedure 38(b) on all issues so triable.


*/s/ Paul K. Vickrey*

Mark D. Roth
Roth Fioretti LLC
311 S. Wacker Drive, Suite 2470
Chicago, Illinois 60606
Phone: (312) 922-6262
mark@rothfioretti.com
***Attorneys for Plaintiffs***

Paul K. Vickrey
Patrick F. Solon
Dylan M. Brown
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 S. Wacker Drive, Suite 2470
Chicago, IL 60606
Phone: (312) 236-0733
vickrey@vvnlaw.com
solon@vvnlaw.com
dbrown@vvnlaw.com
***Attorneys for Plaintiffs***